IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| TRULAND SERVICE CORPORATION, | |
|---|---|
| *Plaintiff,* | |
| v. | Civil Action No.: ELH-10-03445 |
| McBRIDE ELECTRIC, INC., *et al.*, | |
| *Defendants.* | |

**MEMORANDUM OPINION**

In December 2010, Plaintiff, Truland Service Corporation ("Truland"), brought suit against Home Depot USA, Inc. ("Home Depot"), McBride Electric, Inc. ("McBride"), and Scott V. Palka, defendants, seeking to recover $254,474.00 for labor and materials.[1] Of relevance here, Truland alleges that it had "a general services arrangement" with McBride, by which Truland furnished electrical labor and materials to Home Depot, at five stores located in Maryland, for which Truland has not been paid. Compl. ¶¶ 88, 89.

In Counts I through V of its Complaint (ECF 1), Truland sued McBride for breach of contract. In Count VI, Truland seeks to recover from McBride under the theory of quantum meruit. Similarly, in Count VIII Truland asserts a claim against Home Depot based on quantum meruit. In addition, Truland has set forth two counts of unjust enrichment -- one against McBride (Count VII) and the other against Home Depot (Count IX). Truland also avers that Palka, the former Chief Financial Officer of McBride, violated the Maryland Trust Fund Statute, Md. Code (2010 Repl. Vol.), § 9-201, *et seq.* of the Real Property Article ("R.P.") (Count X). Compl. ¶ 110. Notably, Truland does not allege contractual privity with Home Depot.

---

[1] Jurisdiction is based on diversity of citizenship. *See* 28 U.S.C. § 1332.

Moreover, the Complaint is silent as to whether Home Depot fully paid McBride for the work performed by Truland.

In response to the suit, Home Depot filed a "Motion to Dismiss Plaintiff's Complaint, or, in the Alternative, for Summary Judgment" ("Motion," ECF 13), supported by a memorandum ("Memorandum," ECF 13-1). Truland opposes the Motion. *See* "Plaintiff Truland Service Corporation's Opposition to Defendant Home Depot U.S.A., Inc.'s Motion to Dismiss or, in the Alternative, Motion for Summary Judgment" ("Opposition," ECF 19).[2] The matter has been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D.Md. 2010). For the reasons that follow, the court shall grant Home Depot's motion to dismiss Count VIII and Count IX.

## FACTUAL BACKGROUND[3]

In October 2009, McBride and Truland entered a "general services arrangement," by which Truland provided electrical labor and materials at designated Home Depot stores, as directed by McBride. *Id.* ¶ 9.[4] At two stores, one in Annapolis, Maryland and one in Baltimore, Maryland, Truland furnished "certain electrical installation and repair work ("Computer Room Projects").[5] *Id.* ¶ 10. "Per McBride's direction," Truland also "furnished the necessary labor

---

[2] In response to the Opposition, Home Depot filed "Defendant Home Depot U.S.A., Inc.'s Reply Brief to Plaintiff Truland Service Corporation's Opposition to Motion to Dismiss or, in the Alternative, for Summary Judgment" ("Reply," ECF 20).

[3] McBride and Palka have answered the suit. The parties have not yet conducted discovery.

[4] Truland does not contend that this "arrangement" was set forth in writing, but suggests that the "arrangement" was a contract.

[5] In its Memorandum, Home Depot refers to the work performed at the Annapolis and Baltimore stores as the "Computer Room Projects," explaining that the electrical installation and repair work were performed solely in the store's computer rooms. Memorandum 2. Although the Complaint does not specify where the electrical repair work was performed, and never refers to a computer room, for ease of reference I will follow Home Depot's characterization of the work in the Annapolis and Baltimore stores as "Computer Room Projects."

2

and materials to install new power generators" at three Home Depot stores, in Bel Air, Capitol Heights, and Oxon Hill, Maryland, respectively ("Generator Projects").[6] *Id.* ¶ 12. Truland avers that Home Depot was "aware" of Truland's work and "fully accepted the labor and materials" furnished by Truland. *Id.* ¶¶ 14, 49, 50, 59, 60. Nevertheless, it claims that neither McBride nor Home Depot paid Truland for the labor and materials it provided, valued by Truland at $254,474.00. *Id.* ¶¶ 15, 87, 88.

## STANDARD OF REVIEW

Home Depot has moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), alleging that it fails to state a claim. Such a motion tests the sufficiency of the Complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). The purpose of the rule is to provide the defendant with "fair notice" of the claim. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *see also Coleman v. Md. Ct. of Apps.*, 626 F.3d 187, 190 (4th Cir. 2010) (a complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests") (internal quotation marks omitted). To that end, Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). The showing must consist of more than "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1940; *see*

---

[6] Home Depot refers to the work performed at the Bel Air, Capitol Heights, and Oxon Hill stores as the "Generator Projects." Memorandum 2. Similarly, the Complaint acknowledges that the work performed at these stores was in relation to the installation of new power generators.

*Twombly*, 550 U.S. at 555 (the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

Dismissal of a lawsuit is mandated if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see E.I. Du Pont de Nemours and Co. v. Kolon Industries, Inc.*, __ F.3d __, No. 10-1103, 2011 WL 834658, at *2 (4th Cir. Mar. 11, 2011); *Simmons v. United Mort. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009). The Supreme Court said in *Iqbal*, 129 S.Ct. at 1949: "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See also Twombly*, 550 U.S. at 556.

In "determining whether a complaint states a plausible claim for relief . . . the reviewing court [must also] draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. Moreover, the court must "draw all reasonable inferences in favor of the plaintiff." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). However, "'the court need not accept the legal conclusions drawn from the facts, and need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Simmons*, 634 F.3d at 768 (quoting *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009)) (quotation marks and alteration marks omitted in *Simmons*). Notably, "[t]he issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds,* 468 U.S. 183 (1984).

In the alternative, Home Depot requests summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Under F. R. Civ. P. 56(c), summary judgment is properly granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party must demonstrate through the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that a reasonable jury would be unable to reach a verdict for the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). When this burden is met, the non-moving party then bears the burden of demonstrating that there are disputes of material fact and that the matter should proceed to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

As noted, no discovery has yet been conducted. However, Home Depot has submitted three affidavits from its employees to support its claim that it fully paid McBride for Truland's labor and material.

> If the court considers matters outside of the pleading on a Rule 12(b)(6) motion, it must treat the motion as one for summary judgment and provide all parties a "reasonable opportunity to present all material made pertinent to such a motion." Fed.R.Civ.P. 12(b). "When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir.1985).[]

*Paulone v. City of Frederick*, 718 F.Supp.2d 626, 632-33 (D.Md. 2010).

As discussed, *infra*, I need not consider matters outside the pleadings to resolve the motion to dismiss. Therefore, the standard governing Rule 12(b)(6) motions applies here.

## DISCUSSION

It is undisputed that Truland did not furnish labor and materials to Home Depot pursuant to a contract with Home Depot. Rather, Truland supplied labor and materials to Home Depot,

5

pursuant to a "general services arrangement" with McBride. Nevertheless, claiming that it has not been paid, Truland contends that it is entitled to recover $254,474.00 from Home Depot, based on claims of quantum meruit and unjust enrichment. Plaintiff asserts: "Home Depot was aware of the labor and materials being furnished by Truland, and has significantly benefited by and through the labor and materials furnished by Truland."[7] Compl. ¶¶ 90, 99. Truland adds: "Although acknowledging and directly benefiting from the labor and materials provided by Truland, Home Depot has wrongfully failed and refused to pay for all labor and materials that were furnished by Truland." *Id.* ¶¶ 92, 101.

In its Motion, Home Depot maintains that Truland was hired as a subcontractor by McBride, the general contractor, and did not have a contractual relationship with Home Depot.[8] Therefore, it insists that dismissal of the Complaint is warranted. *Id.* at 10. Home Depot posits that plaintiff's recourse was by way of a mechanic's lien action under Maryland law," Memorandum 1, and that Truland's claims of unjust enrichment and quantum meruit "are nothing more than a thinly-veiled attempt to rectify its failure to avail itself of the proper course of action." Memorandum 9. It asserts: "Maryland courts have consistently rejected attempts by subcontractors, such as Plaintiff, to cure this failure by bringing *quasi*-contractual claims against property owners such as Home Depot." Memorandum 1-2.

---

[7] The language in support of Count VIII is identical to the language in Count IX, with the exception of one additional sentence in Count VIII. *See* Compl. ¶ 85-103. This additional sentence provides: "Truland furnished the requisite labor and materials with the understanding that it would be paid in full." *Id.* ¶ 88.

[8] In its Complaint, Truland does not refer to itself as a "subcontractor" or to McBride as a "prime" or "general contractor." But, Home Depot uses that terminology in its Motion, which Truland has adopted in its Opposition. *See* Memorandum 3; Opposition 1; Reply 1. Because Truland does not dispute the terminology, and the characterization appears accurate, I will refer to Truland as the subcontractor and to McBride as the general or prime contractor. *See, e.g.,* R.P. § 9-101(g) (defining a subcontractor as "a person who has a contract with anyone except the owner or his agent").

In any event, Home Depot contends that it has paid the full amount that it owed to McBride "under the prime contract," *id.* at 9, which included the sum due to Truland, and therefore Truland is not entitled to relief by way of claims against Home Depot for unjust enrichment or quantum meruit. In support of this assertion, Home Depot has submitted affidavits from three of its employees, who aver that McBride was paid in full.[9]

---

[9] The affidavit of Rhonda Beynum, the Project Manager in the Information Technology Hardward Deployment Services Department of Home Depot, states that Beynum "oversee[s] various hardware projects and upgrades at Home Depot locations" and her "responsibilities include, among other things, conceptualizing the project and creating a budget, contracting and collaborating with prime contractors as required by the project . . ." Beynum Aff. ¶ 2 ."( ECF 13-2). Beynum further explains that she performed these functions in conjunction with the Computer Room Projects, that McBride was the general contractor, and that Home Depot never had any contact with McBride's subcontractors. Beynum Aff. ¶¶ 3, 4, 6.

The affidavit of Daniel Montoya, Home Depot's Senior Manager in the Building Services Department, provides that Montoya oversees "various projects and upgrades at Home Depot locations throughout the State of Maryland." Montoya Aff. ¶ 2 (ECF 13-3). Montoya's responsibilities at the Generator Project stores included, "among other things, conceptualizing the project and creating a budget, engaging and collaborating with prime contractors as required by the project, and communicating with Home Depot's non-merchandise payables department in submitting Purchase Orders necessitated by the project." *Id.* ¶¶ 2, 3. Montoya avers that McBride was the prime contractor for the Generator Projects, *id.* ¶ 4, "responsible for the complete oversight of the projects, from beginning to end," and "was also solely responsible for contracting with the various subcontractors necessary to complete the Generator Projects." *Id.* ¶ 5. Further, Montoya asserts: "At no time did Home Depot have contact, much less a contract, with any subcontractors of the prime contractor, such as Plaintiff, in connection with the Generator Projects." *Id.* ¶ 6. He also provides the identifying numbers and values of the three Repair Work Orders that Home Depot electronically generated for the Generator Projects. *Id.* ¶ 7. Montoya states that the three invoices for which he authorized payment "include all amounts claimed by Plaintiff in the Complaint in connection with the Generator Projects." *Id.* ¶¶ 8, 9.

Sean Rubino, the Financial Operations-Analyst in the Non-Merchandise Payables Department of Home Depot, states in his Affidavit (ECF 13-4) that his "responsibilities include, among other things, overseeing and managing Home Depot's Electronic Data Interchange System to arrange for payment of vendors in connection with non-merchandise projects at Home Depot locations throughout Maryland." Rubino Aff. ¶ 2. Rubino avers that the eight Computer Room Project invoices and the three Repair Work Orders for the Generator Projects are all "amounts claimed by Plaintiff in the Complaint" and that Home Depot fully paid these amounts to McBride. *Id.* ¶¶ 4, 5, 7-9. Rubino sets forth the invoice number for each of the payments and states that the funds were electronically wired to McBride. *Id.* ¶ 8.

Observing that Home Depot's "core assertion" is that "all outstanding amounts have been paid by Home Depot to its contractor – McBride," Opposition 3, Truland asserts: "As Home Depot's arguments largely hinge on matters outside the Complaint, *i.e.*, the factual assertions in the affidavits regarding the status of any payment, the Court must treat Home Depot's Motion as one for summary judgment . . ." Opposition 3. In this regard, Truland maintains that Home Depot did not provide "a sufficient basis" to support the award of summary judgment, because it did not "conclusively establish that the dollars being claimed by Truland through the instant lawsuit are captured within the amounts that Home Depot allegedly paid to McBride." *Id.* at 8. In particular, Truland argues that Home Depot failed to furnish the necessary "proof" that "the dollars for the labor and materials furnished by Truland are incorporated within the McBride invoices allegedly paid by Home Depot. *Id.* It also points out that the Motion "does not establish that the work performed by Truland . . . was paid through a particular invoice or a series of invoices," because Home Depot did not submit "any invoices, applications for payment, or any other documents, demonstrating that the labor and material furnished by Truland have been paid by Home Depot." *Id.* Truland adds: "The Court is left with nothing but Home Depot's own conclusory allegations as to the scope of the payments made to McBride. . . ." *Id.*

In addition, Truland contends that there is no basis to grant summary judgment because Home Depot's motion "raises an inherent dispute of material fact," namely, Home Depot's "assertion that it has paid all outstanding invoices submitted by its contractor – McBride." *Id.* at 7 (citing Memorandum 6). Truland also complains that it "has not been afforded the opportunity to conduct any discovery to ascertain the veracity of Home Depot's self-serving statements regarding the scope of payments to McBride." *Id.* at 9. Therefore, it urges the Court to deny the motion, "given that discovery has not been undertaken by any party." *Id.*

8

Alternatively, Truland argues, without significant discussion, that it has "satisfied the pleading requirements for both causes of action." Opposition 10. It asserts: "In sum, Home Depot has retained a known benefit for which Truland has not been paid. *See* Exhibit B, Affidavit of Patrick Dolan at ¶¶8, 13;[10] *see also* Exhibit C, Affidavit of Gerard Mullen at ¶¶8, 13.[11]" Opposition 12, 14. Truland sets forth identical elements for both causes of action, *id.* at 10, as follows:

> [A] plaintiff alleging a claim for *quantum meruit* must allege that (a) it conferred a benefit upon the defendant, (b) the defendant had knowledge of the benefit conferred, and (c) it would be inequitable for the defendant to retain the benefit without bestowing payment. *Swedish Civil Aviation Admin. v. Project Mgmt. Enter., Inc.*, 190 Fed.Supp.2d 785, 793 (D.Md. 2002). Likewise, in order to properly state a claim for unjust enrichment in Maryland, a plaintiff must allege that (a) it has conferred a benefit upon the defendant, (b) the defendant had knowledge of the benefit conferred, and that (c) under the circumstances it would be inequitable for the defendant to retain the benefit without payment for the benefit. *Id.*

---

[10] In support of its Opposition, Truland submitted the Affidavit of Patrick Dolan, the Senior Account Manager for Truland. Dolan Aff. ¶ 3 (ECF 19-2, Ex. B). He avers: "In October, 2009, and pursuant to the agreement between McBride . . . and Truland, McBride directed Truland to furnish labor and materials consisting of certain electrical installation and repair work at [the Baltimore and Annapolis Home Depot] locations . . . ." *Id.* ¶ 6. Dolan also states: "During the furnishing of labor and materials to the Home Depot locations in Annapolis and Baltimore, Home Depot personnel were aware of the presence of Truland personnel on site , and of the scope of work being performed." *Id.* ¶ 8. Moreover, "Truland personnel were not given the opportunity to review any McBride invoices or payment applications to confirm whether McBride included the costs for Truland's labor and materials within the invoices or payment applications submitted to Home Depot for work performed at the store locations in Annapolis and Baltimore." *Id.* ¶ 12. Dolan also states that Truland was not paid by Home Depot or McBride. *Id.* ¶ 13.

[11] Truland also submitted the Affidavit of Gerard Mullen in support of its Opposition. Mullen is Truland's Critical Power Service Manager. Mullen Aff. ¶ 3 (ECF 19-3, Ex. C). Mullen stated that he has personal knowledge that Truland provided labor and materials in conjunction with the Generator Projects and that "Home Depot personnel were aware of the presence of Truland personnel on site, and of the scope of work being performed." *Id.* ¶¶ 2, 6, 8. Mullen also states that Truland personnel did not have the opportunity to review McBride's invoices to Home Depot, to determine if McBride included the costs for Truland's labor and materials. *Id.* ¶ 12.

Further, Truland contends that a mechanic's lien action is not the exclusive remedy afforded to a subcontractor. Citing the Maryland Mechanics' Lien Statute, R.P. § 9-101, *et seq.*, Truland posits: "While the Maryland Mechanic's Lien Statute does provide an avenue for relief for both contractors and subcontractors, there is nothing in the language of the statute that mandates that a mechanic's lien is the only form of relief that may be pursued by a subcontractor against an owner." *Id.* at 15.

In reply, Home Depot asserts, Reply 4, n.3:

> In seeking dismissal, Home Depot does not ask the Court to make any factual findings at all. To the contrary, consistent with principles applicable to a motion to dismiss, Home Depot contends that, even assuming that it has not paid all amounts associated with the Generator and Computer Room Projects, Plaintiff is precluded from advancing its *quasi*-contractual claims as a matter of law.

Home Depot notes that, upon nonpayment by a general contractor, a subcontractor may either sue the general contractor or file a mechanic's lien against the subject property. Reply 1. Thus, it maintains that it is entitled to dismissal, even assuming, *arguendo,* that it did not pay McBride for Truland's work.

Unjust enrichment and quantum meruit are both quasi-contractual causes of action that "'are remedies to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided.'" *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.,* 358 Md. 83, 96-97, 747 A.2d 600, 607 (2000) (quoting *Dunnaville v. McCormick & Co.*, 21 F.Supp.2d 527, 535 (1998)). [12] "The

---

[12] In an action based upon diversity of citizenship, the relevant state law controls. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.2d 270, 275 (4th Cir. 2007); *Ben-Joseph v. Mt. Airy Auto Transporters, LLC*, 529 F.Supp.2d 604, 606 (D.Md. 2008). It is undisputed that Maryland state law is applicable to the case *sub judice*. Notably, "a federal court should not interpret state law in a manner that may appear desirable to the federal court, but has not been approved by the state whose law is at issue." *Rhodes v. E.I. DuPont De Nemours and Co.*, ___ F.3d ___, No. 10-1166, slip op. at 8 (4th Cir. April 8, 2011).

general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests." *Dashiell & Sons,* 358 Md. at 96, 747 A.2d at 607; *see also FLF, Inc. v. World Publications, Inc.*, 999 F.Supp. 640, 642 (1998) ("It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties."). In this case, there is no contract between Truland and Home Depot. Therefore, it is appropriate to explore Truland's quasi contractual claims.

Turning first to unjust enrichment, three elements "must be established to sustain a claim based on unjust enrichment . . . ." *Dashiell & Sons, Inc.,* 358 Md. at 95 n.7, 747 A.2d at 607 n.7 (citing *Everhart v. Miles*, 47 Md. App. 131, 136, 422 A.2d 28, 31 (1980)). They are:

> "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value."

*Swedish Civil Aviation Admin. v. Project Mgmt. Enter., Inc.*, 190 F. Supp. 2d 785, 792-93 (D. Md. 2002) (quoting *Abt Associates v. JHPIEGO*, 104 F. Supp. 2d 523, 535 (D. Md. 2000));[13] *see Dashiell & Sons*, 358 Md. at 95-96 n.7, 747 A.2d at 607 n.7 (same); *Everhart*, 47 Md. App. at 136, 422 A.2d at 31 (same).

*Bennett Heating & Air Conditioning, Inc. v. NationsBank of Md.*, 342 Md. 169, 674 A.2d 534 (1996), a consolidated appeal, provides guidance. In that case, the developer had contracts with the general contractor for specific construction projects, but did not fully pay the general contractor upon completion of the agreed upon work. *Id.* at 174, 674 A.2d at 536. In turn, the

---

[13] Truland cites only two cases to support its position: *Bennett Heating & Air Conditioning, Inc. v. NationsBank of Maryland*, 342 Md. 169, 674 A.2d 534 (1996), discussed *infra,* and *Swedish Civil Aviation Admin. v. Project Mgmt. Enter., Inc.*, 190 F. Supp. 2d 785, 793 (D. Md. 2002). Apart from setting forth the elements of quantum meruit and unjust enrichment, *Swedish Civil Aviation* is not relevant to the case at hand.

general contractor did not fully pay the subcontractors. *Id.* Two of the unpaid subcontractors established mechanics' liens and others had potential claims for such liens. The liens and claims were extinguished by the foreclosure of a senior mortgage. *Id.* at 173, 674 A.2d at 536. When the bank foreclosed, there was no surplus in excess of the mortgage debt. *Id.* at 174-75, 674 A.2d at 536-37. A subsidiary of the bank bought the property at auction and then assigned its rights to the second developer. *Id.* at 176, 674 A.2d at 537.

Based on a claim of unjust enrichment, the subcontractors brought suit to obtain restitution from the foreclosure purchaser and its mortgage lender in the amount of the increased value of the property attributable to the subcontractors' unpaid work.[14] *Id.* The defendants included the original developer of the property, the original developer's general partner, the general partner's limited partner, the bank that provided debt financing secured by a mortgage on the property, the second developer, and the second developer's general partner. *Id.* at 174, 175-76, 674 A.2d at 536, 537. The circuit court granted the defense motions to dismiss the plaintiffs' third amended complaint, for failure to state claims. *Id.* at 174, 674 A.2d at 536.

On appeal, the Maryland Court of Appeals "agree[d] with the circuit court which held that the complaint failed to state claims for which the relief of restitution, or of avoidance of the ratification judgment, can be granted." *Id.* at 173, 674 A.2d at 536. Citing numerous cases in support of its determination that the unjust enrichment claim was legally deficient, the Court of Appeals said, *id.* at 182-83, 674 A.2d at 540-41: "The reported decisions involving claims by unpaid subcontractors against owners based on unjust enrichment do indeed almost uniformly deny relief, and, contrary to the submission of the plaintiffs in the instant matter, these cases do

---

[14] Notably, the subcontractors conceded that a subcontractor's claim for unjust enrichment "would not lie against an owner who has paid the general contractor." *Bennett*, 342 Md. at 180, 674 A.2d. at 539.

not turn on whether the owner has fully paid the general contractor."

In reaching its conclusion, the Court of Appeals cited II GEORGE E. PALMER, THE LAW OF RESTITUTION § 10.7(b) (1978, 1995 Cum. Supp. No. 2), for the proposition that "'[m]odern cases continue to hold against aggrieved subcontractors on the theory that the services performed by the subcontractors are for the benefit of the general contractors responsible for the completion of the improvement, not for the benefit of the owner.'" 342 Md. at 183-84, 674 A.2d at 541. In the 2010 Supplement to that treatise, that precept remains viable. It provides, *id.* at 423-25, that, when a subcontractor has a contract right

> against the general (or prime) contractor, but . . . that remedy is inadequate, as it will be when the prime contractor is insolvent, restitution frequently is sought from the landowner, but nearly always denied.[] This common-law position has been modified significantly by mechanic's lien statutes, but when the subcontractor has failed to meet the requirements of the statute, courts refuse to impress a lien on the property or to grant recovery in quasi contract.
>
> \* \* \*
>
> In the only case found in which a subcontractor obtained restitution, the landowner had paid nothing for the work, and the general contractor had left the state without seeking to enforce the contract while leaving the subcontractor unpaid. It seemed evident to the court that recovery in quasi contract by the subcontractor was the only means of preventing the unjust enrichment of the landowner.[]

The *Bennett* Court also cited 1 DAN B. DOBBS, LAW OF REMEDIES § 4.9(4) (2d ed. 1993), at 698 (footnotes omitted) ("Dobbs"), as follows:

> "'Statutes aside, the cases deny recovery. Somewhat similar cases, those in which improvements are ordered by a tenant or someone who is not the owner, also deny recovery to the hapless contractor. The subcontractor cases sometimes say that the landowner is not unjustly enriched and this seems accurate, because the landowner got no more than what he contracted for. He remains liable for the payments due the contractor if he has not already paid. Indeed, this liability redounds to the benefit of the sub, who can, using garnishment or subrogation, enforce his claim against the general contractor against any funds retained by the landowner. In addition, the parties almost certainly contemplated that their contractual arrangements constituted the full set of liabilities. The subcontractor

13

relied on the credit of the general contractor, not the owner, and it is not unfair to him or enriching to the landowner to respect the contractual arrangement.'"

*Bennett*, 342 Md. at 184, 674 A.2d. at 541.

That view was reiterated in *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 157, 757 A.2d 108, 116 (2000). There, the Maryland Court of Appeals said: "Perhaps the most common illustration of receipt of a benefit without restitution liability is found in building construction contracting. The subcontractor who furnished labor and materials which have been incorporated into the building and which benefit the owner has no claim for restitution from the owner in the event that the subcontractor is not paid by the general contractor." *See also* 3 DOBBS, § 12.20(3), at 471-72 ("An owner is not generally liable for improvements made to his property without his assent.[] Nor is he liable to a subcontractor for making improvements for which the owner contracted only to pay the general contractor.[] The owner may of course be held if he contracts directly with a subcontractor . . . .").

Here, the Complaint is silent as to whether Home Depot paid McBride in full for the work and materials provided by Truland. Clearly, if the Complaint stated that Home Depot had paid the full contract price, then Home Depot unquestionably could not have been unjustly enriched. *See Hamilton & Spiegel, Inc. v. Bd. of Educ.*, 233 Md. 196, 201, 195 A.2d 710, 712 (1963); *see also Columbia Group, Inc. v. Homeowners Ass'n of Finisterra, Inc.,* 151 Ariz. 299, 727 P.2d 352, 355 (1986); *Guldberg v. Greenfield,* 259 Iowa 873, 146 N.W.2d 298, 305 (1966); *Lundstrom Constr. Co. v. Dygert*, 254 Minn. 224, 94 N.W.2d 527, 533 (1959); *Green Quarries, Inc. v. Raasch*, 676 S.W.2d 261, 266 (Mo. App. 1984); *Crockett v. Brady,* 455 S.W.2d 807, 808, 810 (Tex. Civ. App. 1970). But, I need not consider Home Depot's contention (supported by

affidavits), that McBride was paid in full.[15] This is because Truland is not entitled to recover from Home Depot for unjust enrichment under the facts alleged, even assuming that Home Depot did not pay McBride in full.

As noted, Truland alleged a contract with McBride, which, in turn, contracted with Home Depot. Truland has not cited a single case or treatise that permits a subcontractor to recover from a property owner (here, Home Depot) for unjust enrichment when, as here, the subcontractor had a contractual relationship only with the general contractor, which, in turn, had a contractual relationship with the property owner.[16]

Truland fares no better with respect to its quantum meruit claim.

"The Latin term *quantum meruit* means 'as much as deserved.'" *Mogavero v. Silverstein*, 142 Md. App. 259, 274, 790 A.2d 43, 51 (2002) (quoting BLACK'S LAW DICTIONARY 1243 (6th ed. 1990)). *See also Blanton v. Friedberg*, 819 F.2d 489, 492 (4th Cir. 1987) ("'The impact of quantum meruit is to allow a promisee to recover the value of services he gave to the defendant irrespective of whether he would have lost money on the contract and been unable to recover in a suit on the contract.'") (citation omitted); *Swedish Civil Aviation*, *supra*, 190 F. Supp. 2d at 793

---

[15] As noted, Truland maintains that Home Depot's affidavits do not clearly establish that payment was made for Truland's work.

[16] The court expresses no opinion as to whether Truland is entitled to pursue a mechanic's lien claim. *See* Maryland Mechanics' Lien Statute, R.P. § 9-101, *et seq*. "The purpose of the Maryland mechanic's lien statute is to protect those who furnish labor and materials during the construction process." *Celta Corp. v. A.G. Parrott Co.*, 94 Md. App. 312, 319, 617 A.2d 632, 636 (1993) (citation omitted). However, "courts have no power to extend [the Maryland Mechanics' Lien Statute] to cases beyond the obvious designs and plain requirements of the statute." *Sterling Mirror of Md., Inc. v. Rahbar*, 90 Md. App. 193, 199, 600 A.2d 899, 902 (1992). *See Goldberg v. Ford*, 188 Md. 658, 663-64, 53 A.2d 665, 667 (1947) ("[W]here labor and material is furnished by a subcontractor for improvements to property, it is only by virtue of [the Mechanics' Lien Statute] that a remedy is available. *Maryland Cas. Co. v. Lacios*, 121 Md. 686, 690, 89 A. 323 [(1913)]. If recovery could be had in Equity in such a case, there would have been no need for such legislation."); *see also Freeform Pools, Inc. v. Strawbridge Home for Boys, Inc.*, 228 Md. 297, 303, 179 A.2d 683, 686 (1962) (same).

("'By its term, *quantum meruit* is a method of obtaining a reasonable value for services'") (quoting *First Union Nat'l Bank v. Meyer, Faller, Weisman, & Rosenberg, P.C.*, 125 Md. App. 1, 23, 723 A.2d 899 (1999)). The Fourth Circuit explained in *Blanton v. Friedberg*, 819 F.2d at 492 (quoting *W.F. Magann Corp. v. Diamond Manufacturing Co.*, 775 F.2d 1202, 1208 (4th Cir.1985)):

> "One who has rendered a service or supplied work, labor and materials under a contract with another, but who has been wrongfully discharged or otherwise prevented from so fully performing as to earn the agreed compensation, may regard the contract as terminated and get judgment for the reasonable value of all that the defendant has received in performance of the contract ...
>
> The underlying purpose of allowing *quantum meruit* recovery is two-fold, i.e. to prevent the breaching party from being unjustly enriched and to restore the aggrieved party in the contract to the position he occupied prior to entry into the contract. *Quantum meruit* merely seeks to return to the plaintiff the reasonable value of the services and goods provided to the defendant."

A quantum meruit claim may be based either on "an implied-in-fact contractual duty or an implied in law (quasi-contractual) duty requiring compensation for services rendered." *Mogavero*, 142 Md. App. at 275, 790 A.2d at 52; *see Mohiuddin v. Doctors Billing & Mgmt. Solutions, Inc.*, 196 Md. App. 439, 447, 9 A.3d 859, 864 (2010) (same). Truland must establish three elements in order to sustain a claim for quantum meruit:

> (1) [a] benefit conferred upon the defendant by the plaintiff; (2)[a]n appreciation or knowledge by the defendant of the benefit; and (3)[t]he acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Swedish Civil Aviation,* 190 F. Supp. 2d at 793 (internal quotations and citations omitted) (brackets added in *Swedish Civil Aviation*).

A quantum meruit claim based on a quasi contract (i.e., implied in law) is the same as a claim of unjust enrichment. *Mohiuddin*, 196 Md. App. at 447, 9 A.3d at 864; *see Sanders v. Mueller*, 133 Fed. Appx. 37, 42 n.3 (4th Cir. 2005) ("Maryland law distinguishes between two

types of quantum meruit claims, one based on an implied-in-fact contract (usually designated as quantum meruit) and the other based on an implied-in-law contract (usually designated as unjust enrichment)."). A quasi contractual claim, or one implied in law,

> involves no assent between the parties, no meeting of the minds. Instead the law implies a promise on the part of the defendant to pay a particular debt. Thus, the implied in law contract [or quasi contract] is indeed no contract at all, it is simply a rule of law that requires restitution to the plaintiff of something that came into defendant's hands but belongs to the plaintiff in some sense.

*Mogavero*, 142 Md. App. at 275, 790 A.2d at 52 (internal quotations and citations omitted) (brackets added in *Mogavero*).

In contrast, "Implied-in-fact contracts are actual contracts." *Mohiuddin*, 196 Md. App. at 447, 9 A.3d at 864. The Maryland Court of Special Appeals has explained *id*. at 447-48, 9 A.3d at 864 (quoting *Mogavero*, 142 Md. App. at 275, 790 A.2d at 52) (emphasis supplied in *Mohiuddin*):

> "An implied-in-fact contract is a 'true contract' and 'means that the parties had a contract that can be seen in their conduct rather than in an explicit set of words.' Implied-in-fact contracts are 'dependent on mutual agreement or consent, and on the intention of the parties; and a *meeting of the minds is required*.'"

Further, the *Mohiuddin* Court explained that an implied-in-fact contract "'*refers to that class of obligations which arises from mutual agreement and intent to promise*, when the agreement and promise have *simply not been expressed in words*. Despite the fact that no words of promise or agreement have been used, *such transactions are nevertheless true contracts*, and may properly be called inferred contracts or contracts implied in fact.'" *Mohiuddin*, 196 Md. App. at 448, 9 A.3d at 865 (quoting 1 RICHARD A. LORD, WILLISTON ON CONTRACTS, § 1.5, pp. 20-21 (1990)) (emphasis supplied in *Mohiuddin*). *See also Dashiell & Sons, Inc.,* 358 Md. at 94, 747 A.2d at 606 ("An implied contract is an agreement which legitimately can be inferred from intention of the parties as evidenced by the circumstances and the ordinary course of dealing and

17

the common understanding of men.") (internal quotation and citations omitted); *Slick v. Reinecker*, 154 Md. App. 312, 318, 839 A.2d 784, 787 (2003) ("'The term [implied in fact contract] only means that the parties had a contract that can be seen in their conduct rather than in an explicit set of words. In other words, the [implied in fact] contract is proved by circumstantial evidence.'") (quoting *Mass Transit Administration v. Granite Construction Co.*, 57 Md. App. 766, 774, 471 A.2d 1121 (1984)) (emphasis omitted) (bracketed comments added in *Slick*).

In *Mohiuddin*, Judge Moylan, writing for the Maryland Court of Special Appeals, noted that appellant's complaint did not specify the type of quantum meruit theory on which the appellant relied. Because the appellant had also brought an unjust enrichment claim, that court "assume[d] that appellant's complaint is not redundant and that his *quantum meruit* claim sounds in implied-in-fact contract law." *Mohiuddin*, 196 Md. App. at 447, 9 A.3d at 864 (citing *Alternatives Unlimited, Inc. v. New Baltimore City Bd. of School Comm'rs*, 155 Md. App. 415, 488-89, 843 A.2d 252 (2004)). Similarly, because Truland seeks to recover under unjust enrichment, and a quantum meruit claim based on a quasi-contract is the same as a claim for unjust enrichment, it would appear that the quantum meruit claim here is based on a claim of an implied-in-fact contract.

The *Mohiuddin* Court determined that the trial judge correctly dismissed the plaintiff's quantum meruit claim. The Court of Special Appeals explained, *Mohiuddin*, 196 Md. App. at 448-49, 9 A.3d at 865:

> Appellant clearly pled that he performed work for PHC [one of the defendants,] for which he expected compensation, and that PHC accepted appellant's services with the knowledge that he expected compensation. Fatal to appellant's *quantum meruit* claim, however, is the absence of any allegation that either appellant or PHC had agreed that PHC was obligated to pay appellant for his services. Without this critical allegation, to wit, that both parties intended that PHC . . . was required

to pay appellant for his services, appellant failed to plead the existence of a mutual agreement between the parties. Because appellant did not allege a meeting of the minds between himself and PHC, his *quantum meruit* claim is legally deficient.

As in *Mohiuddin*, Truland has not alleged any facts to support an implied in-fact contract. For example, Truland has not alleged any interaction between Home Depot and Truland, much less a meeting of the minds, that could give rise to an inference that Home Depot and Truland had an agreement. At most, Truland alleges that Home Depot was "aware" of Truland's work. Thus, there is no factual basis for an implied-in-fact contact.

## CONCLUSION

Notably, Truland has not cited any authority that has permitted a subcontractor to recover from a property owner under unjust enrichment or quantum meruit when, as here, the subcontractor had a contractual agreement with the general contractor, but did not have a contract with the property owner. Because Truland's Complaint does not state a plausible claim for relief in regard to Home Depot, I shall grant Home Depot's motion to dismiss Counts VIII and Count IX. A separate Order follows.


Date: April 27, 2011  /s/
Ellen Lipton Hollander
United States District Judge